**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| SPINDRIFT BEVERAGE CO., INC.,<br><br>Plaintiff,<br><br>v.<br><br>DRINX ADVISORY INC.,<br><br>Defendant. | Civil Action No.<br><br>**COMPLAINT**<br><br>**Jury Trial Demanded** |

Plaintiff Spindrift Beverage Co., Inc. ("Spindrift" or "Plaintiff"), by its undersigned

counsel, for its Complaint against Defendant Drinx Advisory Inc. f/k/a Wine & Spirits Retail

Marketing Inc. ("Drinx Advisory" or "Defendant") alleges as follows:

## NATURE OF THE ACTION

1.     Since 2010, Spindrift has used the trade name and mark SPINDRIFT (the

"SPINDRIFT Mark") to market and sell sparkling waters and related beverages flavored with

real squeezed fruit. Over the years since, the company expanded its line of SPINDRIFT-branded

beverages to include real fruit sodas, sparkling iced teas, sparkling lemonades, iced tea with real

squeezed fruit, and hard seltzers.

2.     SPINDRIFT beverages are an enormous success, selling several hundreds of

millions of dollars annually. They are sold at tens of thousands of retail locations nationwide as

well as via online vendors such as Amazon.

3.     The success of SPINDRIFT beverages is due, at least in part, to Spindrift's

extensive marketing efforts. Spindrift markets its products through all major channels, including

broad digital marketing, partnerships with celebrities and influencers, and multimedia marketing.

1

4906-8113-6838, v. 1

4. SPINDRIFT beverages are also a media favorite. Since the brand's debut in 2010, SPINDRIFT sparkling waters and related beverages have received positive and unsolicited press and media coverage from *The Boston Globe*, *Parade*, *Forbes*, *Eater*, *Brewbound*, *Vox*, *Good Morning America*, *Bloomberg*, *People Magazine*, *USA Today*, and *Bon Appetit*, among other outlets.

5. A selection of SPINDRIFT beverages is shown here in their packaging:

  

6. Now SPINDRIFT products are among the most recognizable and popular sparkling water beverages in the country. Due to Spindrift's efforts and the brand's success, the SPINDRIFT Mark has become inextricably linked in the public mind with Spindrift and its beverages. As a result, the SPINDRIFT Mark represents enormous goodwill and is an extremely valuable asset of Spindrift.

7. As recited in more detail below, in addition to its common-law trademark rights in the SPINDRIFT Mark, Spindrift owns numerous trademark registrations for use of the SPINDRIFT Mark in connection with various beverages. Copies of the certificates of registration for the SPINDRIFT Mark are attached to this Complaint as **Exhibit A**.

8. Upon information and belief, although Defendant is primarily in the business of marketing and consulting services for liquor stores, on or about August 5, 2025, Defendant

2

began marketing and selling canned, pre-mixed alcoholic beverages under the mark SUNDRIFT (the "Infringing Products").

9. Upon information and belief, Defendant distributes to and sells the Infringing Products through retail locations in Massachusetts and Rhode Island.

10. The SUNDRIFT mark is nearly identical to the SPINDRIFT Mark in appearance, sound, and overall commercial impression. The Infringing Products are also highly related to the sparkling waters and other canned beverages sold under the SPINDRIFT Mark. In fact, Spindrift itself has sold canned, alcoholic beverages under the SPINDRIFT Mark. Defendant's use of a nearly identical mark to sell highly related goods is likely to cause confusion among consumers as to the source, sponsorship, and/or affiliation between the Infringing Products and Spindrift.

11. As depicted in the following marketing image, Defendant sells the Infringing Products in can designs that bear significant similarities to Spindrift's can designs.



12. Upon information and belief, Defendant's conduct has been willful and intentional. Spindrift's beverages are pervasive throughout the marketplace and well-known in the industry. Moreover, on October 24, 2025, counsel for Spindrift sent a cease-and-desist letter to Defendant, demanding a cessation of Defendant's infringing conduct. Defendant refused and instead has *increased* the number of Infringing Products it markets and sells.

4906-8113-6838, v. 1

13.    Spindrift, therefore, brings this action for trademark infringement and unfair competition under Sections 32(1) and 43(a) of the Lanham Act, 15 U.S.C. §§ 1114(1), 1125(a), and related claims under Massachusetts state law.

## PARTIES

14.    Plaintiff Spindrift Beverage Co., Inc. is a Delaware corporation with a principal place of business at 55 Chapel Street, Suite 401, Newton, Massachusetts 02458.

15.    Upon information and belief, Defendant Drinx Advisory Inc., formerly known as Wine & Spirits Retail Marketing, Inc., is a Rhode Island domestic profit corporation with a principal place of business at 37 Thurber Boulevard, 1st Floor, Suite 103, Smithfield, Rhode Island 01927.

## JURISDICTION AND VENUE

16.    This Court has subject-matter jurisdiction under Sections 37 and 39 of the Lanham Act, 15 U.S.C. §§ 1119, 1121, and under Sections 1331 and 1338(a) and (b) of the Judicial Code, 28 U.S.C. §§ 1331, 1338(a) and 1338(b). This Court has supplemental jurisdiction over the state law claims under Section 1367(a) of the Judicial Code, 28 U.S.C. § 1367(a).

17.    The Court has personal jurisdiction over Defendant because, upon information and belief, Defendant transacts business in the State, contracts to supply the Infringing Products in the State, regularly does or solicits business in the State, and/or derives substantial revenue from goods sold in the State, and the events giving rise to this Complaint had effects in this State.

18.    Venue is proper in the District of Massachusetts pursuant to 28 U.S.C. §§ 1391(b)(1), (b)(2), & (c)(2) because, for the reasons stated in the preceding Paragraph, Defendant is subject to personal jurisdiction in this District and is, therefore, a resident for venue

4

4906-8113-6838, v. 1

purposes and because a substantial part of the events giving rise to this claim occurred in this District.

**FACTS COMMON TO ALL CLAIMS**

**A.     History of Spindrift and the SPINDRIFT Mark**

19.     Spindrift is a nationwide leader in the market for canned flavored sparkling waters and related beverages.

20.     Spindrift was founded in 2010 with a goal to create a healthier, farm-to-table alternative to traditional sodas. Its founder, Bill Creelman, noticed a disconnect between the unprocessed foods he ate growing up around Western Massachusetts farms and the artificial ingredients prevalent in sodas and related beverages.

21.     That same year, under the SPINDRIFT Mark, Spindrift began selling a line of sodas made with real squeezed fruit.

22.     In 2012, Spindrift expanded its SPINDRIFT-branded products to include sparkling waters, which were also flavored with real squeezed fruit. At the time, Spindrift's focus on producing sparkling waters and fruit sodas from real ingredients was unique in the market.

23.     In the years since, SPINDRIFT sparkling waters became a terrific success. Over the years, Spindrift has sold more than 30 different flavors, and, at present, 20 or more flavors are available for sale throughout the entire United States.

24.     In addition to flavored sparkling water, Spindrift sells SPINDRIFT-branded sodas made with real squeezed fruit and SPINDRIFT-branded iced teas, also made with real squeezed fruit.

5

25.     For several years, Spindrift also sold alcoholic, canned beverages under the SPINDRIFT Mark, including spiked sparkling waters and spiked sparkling lemonade. Spindrift does not currently sell alcoholic beverages.

26.     Spindrift began as a founder-led company selling limited batches of simple-ingredient sodas with no artificial flavors or sweeteners, and has grown into a market leader for canned flavored sparkling waters and related beverages.

27.     Despite its phenomenal growth and success, Spindrift remains committed to using natural ingredients in its products. In 2026, Spindrift became the only beverage brand verified under the Non-Ultraprocessed Food (Non-UPF) Verified Standard, meaning every SPINDRIFT beverage is made without significant ultraprocessed ingredients or artificial sweeteners.

**B.      Promotion and Success of the SPINDRIFT Mark**

28.     All of Spindrift's flavored sparkling waters, sodas, iced teas, and alcoholic beverages have been marketed and sold under the SPINDRIFT Mark.

29.     Examples of Spindrift products bearing the SPINDRIFT Mark are depicted below:

  

(the "Spindrift Can Designs"). One of Spindrift's alcoholic products is depicted below:

6



30.     Spindrift invests significant sums in advertising and promoting its brand and products. In recent years, Spindrift has spent millions of dollars annually to promote products under the SPINDRIFT Mark. Spindrift's marketing efforts span a wide variety of media and outlets, including social and digital marketing, connected TV, audio advertising and partnerships with celebrities and influencers. These efforts, combined with Spindrift's own social media presence and earned press relations coverage have garnered billions of consumer impressions.

31.     Spindrift invests millions of dollars in connected television advertising to consumers on platforms such as Hulu, Amazon Prime, Disney, HBO Max, and Peacock. Spindrift also invests in e-commerce retail media advertising with retailers such as Amazon, Target, and Walmart.

32.     Spindrift is also prevalent across social media. Spindrift has over 500,000 followers across its own accounts on Instagram, Facebook, YouTube, LinkedIn, and TikTok.

33.     Consumers throughout the country have embraced the SPINDRIFT brand. SPINDRIFT beverages are widely available at major retailers in every channel, including nationwide warehouse clubs; national and regional retail grocery chains, and more; in addition to numerous smaller stores and chains. Approximately 18,000 retail grocery locations and 34,000 total stores nationwide sell SPINDRIFT products.

4906-8113-6838, v. 1

34.    SPINDRIFT beverages are also sold online through Spindrift's own website, drinkspindrift.com, as well as through many e-commerce websites.

35.    In short, SPINDRIFT-branded beverages are an enormous success, selling several hundred million dollars annually.

36.    The media also adores Spindrift's sparkling waters and other beverages and gives the products laudatory reviews and extensive unsolicited press, including in *The Boston Globe*, *Parade*, *Forbes*, *Eater*, *Brewbound*, *Vox*, *Good Morning America*, *Bloomberg*, *People Magazine*, *USA Today*, and *Bon Appetit*, among other outlets.

37.    For example, an article in *epicurious* referred to SPINDRIFT's Half Tea & Half Lemon–flavored sparkling water as "the most special flavored sparkling water of all."[1]

38.    An article in *Eater* teases: "Fair warning: Once you cross over to Spindrift – or 'start drifting,' . . . no other brand will be good enough for you."[2]

39.    A headline in *Parade* refers to Spindrift as a "Beloved Beverage Brand."[3]

40.    SPINDRIFT-branded products have also won numerous awards. For example, Spindrift's spiked sparkling waters won Best Hard Seltzer at the Beverage Digest Awards in 2021. More recently, SPINDRIFT Concord Grape Soda won Best New Soda at the Allrecipes Golden Cart Awards and Yuzu Mandarin won Best Flavored Seltzer at the *People* Food Awards, both in 2026.

41.    In addition to its common-law rights in the SPINDRIFT Mark, Spindrift owns numerous federal trademark registrations at the United States Patent and Trademark Office ("USPTO") for SPINDRIFT and SPINDRIFT-inclusive marks in connection with a variety of

---

[1] https://www.epicurious.com/expert-advice/arnold-palmer-spindrift-tastes-like-summer-might-come-after-all-article (last accessed July 31, 2026).

[2] https://www.eater.com/2019/5/17/18627963/lacroix-bad-spindrift-good (last accessed July 31, 2026).

[3] https://parade.com/food/spindrift-tea-launch-march-2026 (last accessed July 31, 2026).

8

beverages (the "SPINDRIFT Registrations"). The SPINDRIFT Registrations include those listed

in the following table:

| Reg. No. | Mark | Reg. Date | Goods |
|---|---|---|---|
| 4,132,344* | SPINDRIFT SODA | Apr. 24, 2012 | IC 32: Soft drinks and carbonated soft drinks, enhanced with fresh fruit juice, vitamins, minerals, nutrients, amino acids, herbs, aerated water, soda water and seltzer water |
| 5,086,296* | SPINDRIFT | Nov. 22, 2016 | IC 32: sparkling water; flavored sparkling water; carbonated water; flavored carbonated water; seltzer; flavored seltzer; soft drinks, namely, sodas and sparkling sodas; lemonade; soda water; flavored soda water; fruit based beverages; soft drinks and carbonated soft drinks enhanced with fresh fruit juice, vitamins, minerals, nutrients, amino acids, herbs, aerated water, soda water and seltzer water |
| 5,345,815* | **spindrift** | Nov. 28, 2017 | IC 32: sparkling water; flavored sparkling water; carbonated water; flavored carbonated water; seltzer; flavored seltzer; soft drinks, namely, sodas and sparkling sodas; lemonade; soda water; flavored soda water; fruit based beverages; soft drinks and carbonated soft drinks enhanced with fresh fruit juice, vitamins, minerals, nutrients, amino acids, herbs, aerated water, soda water and seltzer water |
| 5,649,643* | SPINDRIFT | Jan. 08, 2019 | IC 30: Tea; iced teas; tea based beverage |
| 5,651,707* | **spindrift** | Jan. 08, 2019 | IC 30: Tea; iced teas; tea based beverages |
| 7,408,831 | SPINDRIFT | Jun. 04, 2024 | IC 32: Beverage waters, namely, drinking waters |

42.     Copies of the certificates of registration for the foregoing are attached to this

Complaint as **Exhibit A**.

43.     Each of the SPINDRIFT Registrations is valid, subsisting, and in full force and

effect and serves as *prima facie* evidence of Spindrift's ownership of the registered mark in

connection with the identified goods. Moreover, Reg. Nos. 4,132,344, 5,086,296, 5,345,815,

5,649,643, and 5,651,707, as marked with an asterisk (*) above, have become incontestable, such

9

that they constitute conclusive evidence of Spindrift's ownership of the registered mark in connection with the identified goods.

44.     As a result of Spindrift's efforts and the tremendous success of SPINDRIFT-branded beverages, the SPINDRIFT Mark is a strong mark and has come to identify Spindrift exclusively and uniquely.

45.     The SPINDRIFT Mark represents enormous goodwill, signifying products that are of the highest quality and derive exclusively from Spindrift, and is an extremely valuable asset of Spindrift.

46.     Spindrift is suffering, and will continue to suffer, irreparable harm if Defendant is allowed to continue to trade on Spindrift's reputation and goodwill by offering the Infringing Products under a mark confusingly similar to the SPINDRIFT Mark.

**C.      Defendant, the SUNDRIFT mark, and the Infringing Products**

47.     Upon information and belief, Defendant is a marketing and consulting company that works with liquor stores in the Massachusetts and Rhode Island area.

48.     Upon information and belief, on or around August 5, 2025, Defendant began producing, distributing, marketing, and selling a line of canned, pre-mixed alcoholic beverages under the mark SUNDRIFT (the "Infringing Products").

49.     Upon information and belief, Defendant's initial line of Infringing Products included three flavors, described as Vodka Lemonade, Vodka Iced Tea, and Vodka Half & Half. Upon information and belief, Defendant has expanded the Infringing Products to seven by adding fruit-flavored iced teas and lemonades, such as Vodka Raspberry Iced Tea.

50.     Upon information and belief, the Infringing Products are offered for sale, and have in fact been sold, to consumers at liquor stores in Massachusetts, Rhode Island, and

4906-8113-6838, v. 1

Connecticut, including *Wines & More* stores in Mansfield, Walpole, Fairhaven, and Wareham, Massachusetts, among other locations.

51.    Upon information and belief, all Infringing Products are marketed and sold under the SUNDRIFT mark.

52.    The SUNDRIFT mark is nearly identical to the SPINDRIFT Mark in appearance, sound, and overall commercial impression. Both marks end with DRIFT and begin with a short, single-syllable word of the form S__N.

53.    The Infringing Products are also highly related, if not identical, to the sparkling waters and other beverages that have been sold under the SPINDRIFT Mark. The Infringing Products include alcoholic lemonades and iced teas, and Spindrift already sells multiple flavors of lemonades and iced teas. Consumers are also accustomed to a single brand offering alcoholic and non-alcoholic beverages and to established producers of non-alcoholic, canned beverages expanding to sell alcoholic, canned beverages under the same or similar branding. Indeed, Spindrift itself has sold non-alcoholic, canned beverages and alcoholic, canned seltzers and lemonades, both under the SPINDRIFT Mark.

54.    According to USPTO records, on August 27, 2025, Defendant filed U.S. Trademark Application Serial No. 99360274 (the "SUNDRIFT Application") with the USPTO to register the mark SUNDRIFT for use with "Ready-to-drink alcoholic cocktails made with distilled spirits, fruit juices, and natural flavorings; Canned alcoholic beverages, excluding beer; Spirit-based alcoholic beverages sold in single-serve containers" in International Class 33.

55.    According to the records of the USPTO, the SUNDRIFT Application remains pending.

56.    Upon information and belief, Defendant produces and distributes the Infringing Products in cans that bear the following artwork:



57.    The artwork shown above on the Infringing Products increases the likelihood that consumers will be confused by use of the SUNDRIFT mark because the artwork echoes significant aspects of the well-known Spindrift Can Designs, including the horizontal, centered placement of the primary mark above a centered, circular device over a two-tone background, as shown below:



58.    Defendant has never been associated with Spindrift and has never been authorized to use or to trade on Spindrift's well-known SPINDRIFT Mark or to use design elements based upon the Spindrift Can Designs.

59.    Defendant's activities producing, marketing, and selling the Infringing Products under the SUNDRIFT mark are likely to confuse consumers or cause consumers to mistakenly believe that the Infringing Products are associated with or have the approval or authorization of

12

Spindrift when they do not. Defendant's conduct constitutes trademark infringement and unfair competition under the Lanham Act and Massachusetts common and statutory law.

60.     Upon information and belief, Defendant intends to further expand the line of Infringing Products and the geographic area of distribution and sale. In other words, Defendant intends to expand the scope and scale of its infringement.

**D.     Defendant's Unlawful Conduct is Willful and Harms Spindrift**

61.     Upon information and belief, Defendant knowingly and willfully adopted a mark that is nearly identical mark to the SPINDRIFT Mark to sell highly related goods with an intent to cause confusion or mistake among consumers as to the source or affiliation of the Infringing Products with the goal to profit off the considerable renown and goodwill of the SPINDRIFT Mark.

62.     Upon information and belief, Defendant had actual knowledge of the SPINDRIFT Mark and the Spindrift Can Designs before Defendant began its unlawful conduct.

63.     By August 2025, which is, according to USPTO records, the earliest date of Defendant's use of the SUNDRIFT mark, SPINDRIFT had already become a very strong, established brand. SPINDRIFT-branded products were then and continue to be prevalent throughout the market nationwide, including throughout Massachusetts, Rhode Island, and Connecticut.

64.     Moreover, the SPINDRIFT Registrations put Defendant on constructive notice of Spindrift's rights in the SPINDRIFT Mark.

65.     The term "sundrift" has no independent meaning, and it also has no contextual meaning within the industry for alcoholic beverages or canned products.

13

66.     Upon information and belief, the SUNDRIFT mark will appear to consumers to be an obvious play on the well-known and strong SPINDRIFT mark, as intended by Defendant.

67.     Defendant's willful conduct is further evidenced by the facts that Defendant chose a nearly identical mark to sell nearly identical goods, imitated certain elements of the Spindrift Can Designs, and adopted marketing and product choices that emulate Spindrift.

68.     On October 24, 2025, Spindrift, through its counsel, sent a cease-and-desist letter to counsel for Defendant. A copy of this letter is attached to this Complaint as **Exhibit B**.

69.     Spindrift's letter explained that Defendant's use of the SUNDRIFT Mark and use of the can designs for the Infringing Products, *inter alia*, infringed Spindrift's trademark rights. Spindrift demanded that Defendant cease its infringing conduct and withdraw the SUNDRIFT Application.

70.     In response to Spindrift's letter, not only has Defendant refused to cease but, upon information and belief, has instead increased its unlawful conduct.

71.     Upon information and belief, Defendant has recently expanded its line of Infringing Products to add new flavors. Moreover, whereas Defendant's original flavors were not fruit-based, upon information and belief, Defendant's new Infringing Products feature fruit flavors, such as Vodka Raspberry Iced Tea, that again imitate the real fruit branding (and fruit-flavored iced teas and lemonades) that consumers associate with Spindrift.

72.     Defendant's willful and bad-faith conduct subjects it to trebled and/or punitive damages as well as an award to Spindrift of attorneys' fees and costs under applicable federal and state laws.

73.     The SPINDRIFT Mark is vital to Spindrift, and Spindrift will suffer substantial and irreparable harm if Defendant is permitted to trade on Spindrift's rights and goodwill by

14

offering beverages under the SUNDRIFT mark. The goodwill that Spindrift has built up in its SPINDRIFT Mark through years of substantial investment and effort is put at risk by virtue of Defendant's actions.

74.    Defendant's actions have caused and will continue to cause irreparable harm to Spindrift unless permanently enjoined. Spindrift has no adequate remedy at law.

**FIRST CLAIM FOR RELIEF:**
**Trademark Infringement, 15 U.S.C. § 1114(1)**

75.    Spindrift repeats and realleges the allegations set forth in paragraphs 1-74 above as if fully set forth herein.

76.    Spindrift owns the SPINDRIFT Registrations for use of the SPINDRIFT Mark with sparkling water and a wide variety of related beverages.

77.    The SPINDRIFT Registrations are valid, subsisting, and in full force and effect. Reg. Nos. 4,132,344, 5,086,296, 5,345,815, 5,649,643, and 5,651,707 are incontestable.

78.    The SPINDRIFT Registrations put Defendant on constructive notice of Spindrift's exclusive rights in the SPINDRIFT Mark. Additionally, upon information and belief, prior to Defendant's first marketing and sale of the Infringing Products, Defendant was on actual notice of Spindrift's exclusive rights in the SPINDRIFT Mark.

79.    Defendant's unauthorized use of the SUNDRIFT mark, which is confusingly similar to the registered SPINDRIFT Mark, in connection with canned alcoholic beverages that are closely related to the goods covered by the SPINDRIFT Registrations, is likely to cause confusion, mistake, or deception among consumers as to the source, sponsorship, or affiliation of the Infringing Products.

4906-8113-6838, v. 1

80. Defendant's conduct is willful, intended to confuse consumers to reap the benefit of the goodwill in the SPINDRIFT Mark, and constitutes trademark infringement in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

81. Defendant's conduct has caused and is causing immediate and irreparable injury to Spindrift, including by damaging the value, exclusivity, and reputation of the SPINDRIFT brand and mark. Spindrift has no adequate remedy at law.

## SECOND CLAIM FOR RELIEF:
### Trademark Infringement and Unfair Competition, 15 U.S.C. § 1125(a)

82. Spindrift repeats and realleges the allegations set forth in paragraphs 1-81 above as if fully set forth herein.

83. Since 2010, Spindrift has marketed and sold a variety of beverages nationwide under the SPINDRIFT Mark.

84. By virtue of Spindrift's long use and advertising of the SPINDRIFT Mark in connection with beverages, Spindrift has acquired nationwide, common law trademark rights and federal registered trademark rights in the mark.

85. The SPINDRIFT Mark is inherently distinctive and has, regardless, acquired secondary meaning.

86. Spindrift's nationwide rights in the SPINDRIFT Mark in connection with beverages existed prior to any use by Defendant of the SUNDRIFT mark.

87. Defendant's SUNDRIFT mark is nearly identical to the SPINDRIFT Mark.

88. The Infringing Products are similar to the goods offered by Spindrift under the SPINDRIFT mark and are marketed and sold to consumers to whom and in geographic regions where SPINDRIFT-branded goods are marketed and sold, including within this State.

4906-8113-6838, v. 1

89.     Upon information and belief, prior to Defendant's first marketing and sale of the Infringing Products, Defendant was on actual notice of Spindrift's exclusive rights in the SPINDRIFT Mark. Defendant's actions are, therefore, in bad faith, with full knowledge of Spindrift's prior use of, exclusive rights in, and ownership of the SPINDRIFT Mark, with full knowledge of the goodwill and reputation associated with the SPINDRIFT Mark, and with full knowledge that Defendant has no established right, license, or authority to use the SUNDRIFT mark in connection with any beverage products.

90.     Defendant's production, marketing, and sale of the Infringing Products is intended to and is likely to cause confusion and mistake and to deceive consumers as to the source, origin, or sponsorship of the Infringing Products.

91.     Defendant's actions, therefore, constitute willful trademark infringement and unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

92.     Defendant's conduct has caused and is causing immediate and irreparable injury to Spindrift, including by damaging the value, exclusivity, and reputation of the SPINDRIFT brand and mark. Spindrift has no adequate remedy at law.

## THIRD CLAIM FOR RELIEF:
### Trademark Infringement, Massachusetts Common Law

93.     Spindrift repeats and realleges the allegations set forth in paragraphs 1-92 above as if fully set forth herein.

94.     Since 2010, Spindrift has marketed and sold a variety of beverages nationwide under the SPINDRIFT Mark.

95.     By virtue of Spindrift's long use and advertising of the SPINDRIFT Mark in connection with beverages, Spindrift has acquired nationwide, common law trademark rights in the mark.

4906-8113-6838, v. 1

96.    The SPINDRIFT Mark is inherently distinctive and has, regardless, acquired secondary meaning.

97.    Spindrift's common-law rights in the SPINDRIFT Mark in connection with beverages existed prior to any use by Defendant of the SUNDRIFT mark.

98.    Defendant's unauthorized use of the SUNDRIFT mark, which is nearly identical to the SPINDRIFT Mark, to sell related goods is intended to and is likely to cause consumer confusion as to the source, sponsorship, or affiliation of Defendant's goods and constitutes misappropriation of Spindrift's goodwill and reputation.

99.    Defendant's unauthorized use of the SUNDRIFT mark in connection with related goods constitutes trademark infringement and unfair competition under the common law of the Commonwealth of Massachusetts and other applicable state laws.

100.    Defendant's conduct has caused and is causing immediate and irreparable injury to Spindrift, including by damaging the value, exclusivity, and reputation of the SPINDRIFT brand and mark. Spindrift has no adequate remedy at law.

## FOURTH CLAIM FOR RELIEF:
### Unfair Business Practices, Mass. Gen. Laws ch. 93A

101.    Spindrift repeats and realleges the allegations set forth in paragraphs 1-100 above as if fully set forth herein.

102.    Spindrift and Defendant are engaged in trade or commerce within the meaning of Massachusetts General Laws chapter 93A.

103.    Defendant's unauthorized use of the SUNDRIFT mark, which is confusingly similar to the SPINDRIFT Mark, constitutes an unfair method of competition and unfair or deceptive act or practice in violation of Mass. Gen. Laws ch. 93A, §§ 2 and 11.

4906-8113-6838, v. 1

104. Defendant's acts of unfair competition and unfair or deceptive practice in violation of Mass. Gen. Laws ch. 93A, §§ 2 and 11, occurred primarily and substantially within the Commonwealth.

105. Defendant's conduct has caused and is causing immediate and irreparable injury to Spindrift, including by damaging the value, exclusivity, and reputation of the SPINDRIFT brand and mark.

106. Defendant's conduct entitles Spindrift to injunctive relief, trebled damages, and attorneys' fees and costs. Because Defendant's conduct has been knowing and willful, Spindrift is entitled to double or treble damages.

107. Defendant's conduct has caused irreparable injury to Spindrift and will continue to do so unless enjoined by this Court. Spindrift has no adequate remedy at law.

## PRAYER FOR RELIEF

**WHEREFORE**, Spindrift respectfully demands as follows:

1) Judgment be entered for Spindrift on each of its claims.

2) Defendant, as well as its officers, directors, administrators, employees, agents, licensees, representatives, affiliates, successors, parents, subsidiaries, and assigns, and all persons acting in concert or in participation with them, be immediately and permanently enjoined from:

a) Infringing Spindrift's exclusive trademark rights in the SPINDRIFT Mark, including, without limitation, by using the SUNDRIFT mark or any derivation or colorable imitation thereof that is identical and/or confusingly similar to the SUNDRIFT mark or SPINDRIFT Mark (the "Prohibited Indicia") in connection with the promotion, marketing, and offering of any goods or services;

19

4906-8113-6838, v. 1

b) Making or employing any commercial use of the Prohibited Indicia;

c) Prosecuting, maintaining, or defending against cancellation U.S. Trademark Application Serial No. 99/360,274, currently pending before the USPTO, to register the mark SUNDRIFT for use in connection with "Ready-to-drink alcoholic cocktails made with distilled spirits, fruit juices, and natural flavorings; Canned alcoholic beverages, except beer; Spirit-based alcoholic beverages sold in single-serve containers."

d) Making or displaying any statement, picture, or representation that is likely to lead the public or the trade to believe that Defendant's goods or services are in any manner associated or affiliated with or approved, endorsed, licensed, sponsored, or authorized by or otherwise connected with Spindrift or the SPINDRIFT brand;

e) Using any other false designation of origin or any other thing calculated or likely to cause confusion or mistake in the mind of the trade or public or to deceive the trade or public into believing that Defendant's activities are in any way sponsored, licensed, endorsed, or authorized by, or affiliated or connected with or originate from Spindrift or the SPINDRIFT brand;

f) Doing any other acts or things calculated or likely to cause confusion or mistake in the mind of the public or to lead purchasers or consumers into the belief that the goods or services promoted or offered by Defendant emanate from or originate with, or are somehow sponsored, licensed, endorsed, authorized by, or affiliated or connected with Spindrift or the SPINDRIFT brand;

g) Engaging in any other activity constituting unfair competition with Spindrift; and

20

h)  Aiding, assisting, or abetting any other party in doing any act prohibited by sub-paragraphs (a) through (g) above.

3)  Defendant be ordered to deliver up for destruction all infringing materials in its possession, custody, or control, including without limitation the Infringing Products and any other products or marketing materials bearing the SUNDRIFT mark or any simulation, reproduction, copy, or colorable imitation of the Prohibited Indicia.

4)  Defendant be ordered to recall from retail locations all Infringing Products and any other products or marketing materials bearing the SUNDRIFT mark or any simulation, reproduction, copy, or colorable imitation of the Prohibited Indicia in the possession, custody or control of the retail establishments, and deliver up such items for destruction.

5)  Defendant be directed to file with the Court and serve upon Spindrift's attorneys within thirty (30) days after entry of judgment a report in writing under oath, setting forth in detail the manner and form in which it has complied with the above.

6)  Spindrift be awarded all actual and compensatory damages it has sustained in consequence of Defendant's unlawful conduct described above and that such damages be trebled pursuant to 15 U.S.C. § 1117(a) and Massachusetts law.

7)  Defendant be ordered to account to Spindrift for, and disgorge and pay to Spindrift, all the gains, profits, savings, and advantages realized by Defendant from its acts of unlawful conduct described above.

8)  Spindrift be awarded all damages and restitution recoverable under Mass. Gen. Laws ch. 93A.

9)  Spindrift be awarded all other recoverable gains, profits, property, and advantages derived by Defendant from its unlawful conduct.

4906-8113-6838, v. 1

10)    Defendant be ordered to pay Spindrift exemplary and punitive damages to the fullest extent under the law.

11)    Spindrift be awarded its full costs incurred in this action, including reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a), 17 U.S.C. § 505, and Massachusetts law.

12)    Spindrift be awarded interest, including pre-judgment interest on the foregoing sums.

13)    Spindrift be awarded such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMAND

Spindrift demands a jury trial in this action.

22

4906-8113-6838, v. 1

Respectfully submitted,

Dated:   August 11, 2026            SPINDRIFT BEVERAGE CO., INC.,
By its counsel,


*/s/ Andrew T. O'Connor*                    .
Jennifer Furey (BBO# 634174)
Andrew T. O'Connor (BBO# 664811)
GOULSTON & STORRS
One Post Office Square
Boston, MA 02109
Tel: (617) 482-1776
Fax: (617) 574-4112
Email: jfurey@goulstonstorrs.com
aoconnor@goulstonstorrs.com


and


Leo Kittay (*pro hac vice forthcoming*)
Brian Leary (*pro hac vice forthcoming*)
FROSS ZELNICK LEHRMAN & ZISSU, P.C.
151 W. 42nd Street, 17th Floor
New York, NY 10036
Tel:   (212) 813-5900
Fax:  (212)813-5901
Email:  lkittay@fzlz.com
bleary@fzlz.com

23

4906-8113-6838, v. 1